# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW MEXICO

CHRIS SAMUEL MARTINEZ,

    Plaintiff,

v.                                                                           CIV 18-1196 KBM

ANDREW M. SAUL,[1]
Commissioner of Social
Security Administration,

    Defendant.

## **MEMORANDUM OPINION AND ORDER**

THIS MATTER is before the Court on Plaintiff's Motion to Reverse and Remand for a Rehearing with Supporting Memorandum (*Doc. 17*), filed May 8, 2019. Pursuant to 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73(b), the parties have consented to me serving as the presiding judge and entering final judgment. *See Docs. 5, 9, 10.* Having considered the record, submissions of counsel, and the relevant law, the Court finds Plaintiff's motion is well-taken and will be granted.

**I.    Procedural History**

On June 16, 2015, Chris Samuel Martinez ("Plaintiff") filed concurrent applications with the Social Security Administration for disability insurance benefits ("DIB") under Title II of the Social Security Act ("SSA") and for supplemental security

---

[1] Andrew Saul was confirmed as Commissioner of Social Security on June 17, 2019 and is automatically substituted as a party pursuant to Fed. R. Civ. P. 25(d).

income ("SSI") under Title XVI of the SSA. Administrative Record[2] (AR) at 258-65. Plaintiff alleged a disability onset date of April 1, 2015. AR at 258-65. Plaintiff's date last insured was September 30, 2015. AR at 127. Disability Determination Services ("DDS") determined that Plaintiff was not disabled both initially (AR at 133, 140) and on reconsideration (AR at 156, 168). Plaintiff requested a hearing with an Administrative Law Judge ("ALJ") on the merits of his applications. AR at 211.

On October 16, 2017, ALJ Michael Leppala held a hearing at which Plaintiff, his sister, and a vocational expert ("VE") testified. *See* AR at 30-41, 50-106. ALJ Leppala issued an unfavorable decision on April 18, 2018. AR at 30-41. Plaintiff submitted a Request for Review of Hearing Decision/Order to the Appeals Council, which the Council denied on October 30, 2018. AR at 1-6. Consequently, the ALJ's decision became the final decision of the Commissioner. *See Doyal v. Barnhart*, 331 F.3d 758, 759 (10th Cir. 2003).

## II.     Applicable Law and the ALJ's Findings

A claimant seeking disability benefits must establish that he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *see also* 20 C.F.R. §§ 404.1505(a). The Commissioner must use a five-step sequential evaluation process to determine eligibility for benefits. 20 C.F.R. § 404.1520(a)(4); *see also Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009).

---

[2] Documents 13-1 through 13-10 contain the sealed Administrative Record. The Court cites the Administrative Record's internal pagination, rather than the CM/ECF document number and page.

The claimant has the burden at the first four steps of the process to show: (1) he is not engaged in "substantial gainful activity"; (2) he has a "severe medically determinable . . . impairment . . . or a combination of impairments" that has lasted or is expected to last for at least one year; and (3) his impairment(s) meet or equal one of the listings in Appendix 1, Subpart P of 20 C.F.R. Pt. 404; or (4) pursuant to the assessment of the claimant's residual functional capacity ("RFC"), he is unable to perform his past relevant work. 20 C.F.R §§ 404.1520(a)(4)(i-iv), 416.920(a)(4)(i-iv); *see also Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005) (citations omitted). "RFC is a multidimensional description of the work-related abilities [a claimant] retain[s] in spite of [his] medical impairments." *Ryan v. Colvin*, Civ. 15-0740 KBM, 2016 WL 8230660, at *2 (D.N.M. Sept. 29, 2016) (citing 20 C.F.R. § 404, Subpt. P, App. 1 § 12.00(B); 20 C.F.R. § 404.1545(a)(1)). If the claimant meets "the burden of establishing a prima facie case of disability[,] . . . the burden of proof shifts to the Commissioner at step five to show that" Plaintiff retains sufficient RFC "to perform work in the national economy, given his age, education, and work experience." *Grogan*, 399 F.3d at 1261 (citing *Williams v. Bowen*, 844 F.2d 748, 751 & n.2 (10th Cir. 1988)); *see also* 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

At Step One of the process, ALJ Leppala found that Plaintiff met "the insured status requirements of the Social Security Act through September 30, 2015." AR at 32. He also determined that Plaintiff did "not engage[] in substantial gainful activity since April 1, 2015, the alleged onset date." AR at 32 (citing 20 C.F.R. §§ 404.1571-1576, 416.971-976). At Step Two, the ALJ concluded that Plaintiff had the following severe impairments: "Disease of the Aortic Valve and Obesity." AR at 32 (citing 20 C.F.R.

§§ 404.1520(c), 416.920(c)). The ALJ indicated that Plaintiff's impairment of "Affective Disorders" was non-severe, as it did "not cause more than minimal limitation in [his] ability to perform basic mental work activities." AR at 33.

At Step Three, the ALJ found that Plaintiff did "not have an impairment or combination of impairments that [met] or medically equal[ed] the severity of one of the listed impairments in 20 [C.F.R.] Part 404, Subpart P, Appendix 1." AR at 34 (citing 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, 416.926). At Step Four, he found that while Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms," his "statements concerning the intensity, persistence and limiting effects of these symptoms [were] not entirely consistent with the medical evidence and other evidence in the record . . . ." AR at 39. Considering the evidence of record, he found as follows:

> [Plaintiff] has the residual functional capacity to perform light work as defined in 20 [C.F.R. §§] 404.1567(b) and 416.967(b). In addition, [Plaintiff] is capable of occasionally lifting and/or carrying 20 pounds, frequently lifting and/or carrying ten pounds, standing and/or walking for about six hours in an eight-hour workday, and sitting for about six hours in an eight-hour workday, all with normal breaks. He is further limited to occasionally climbing ramps or stairs, never climbing ladders, ropes, or scaffolds, frequently balancing, frequently stooping, frequently kneeling, frequently crouching, and frequently crawling. [Plaintiff] must avoid concentrated exposure to extreme cold and heat, and atmospheric conditions, and even moderate exposure to hazards.

AR at 35. The ALJ went on to find that Plaintiff was "unable to perform any past relevant work." AR at 40 (citing 20 C.F.R. §§ 404.1565, 416.965). But at Step Five, he found that "[c]onsidering [Plaintiff's] age, education, work experience, and [RFC], there are jobs that exist in significant numbers in the national economy that

4

[he] can perform." AR at 40 (citing 20 C.F.R. §§ 404.1569, 404.1569(a), 416.969, 416.969(a)). More particularly, the ALJ found Plaintiff able to perform the positions of Housekeeping cleaner (DOT Code 323.687-014) and Cafeteria attendant (DOT Code 311.677-010). Consequently, he determined that Plaintiff had not been under a disability from April 1, 2015, through the date of the decision. AR at 41 (citing 20 C.F.R. §§ 404.1520(g), 416.920(g)).

### III. Legal Standard

The Court must "review the Commissioner's decision to determine whether the factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (quoting *Hackett v. Barnhart*, 395 F.3d 1168, 1172 (10th Cir. 2005)). A deficiency in either area is grounds for remand. *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1161, 1166 (10th Cir. 2012) (citation omitted). "Substantial evidence is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Lax*, 489 F.3d at 1084 (quoting *Hackett*, 395 F.3d at 1172). "It requires more than a scintilla, but less than a preponderance." *Id.* (quoting *Zoltanski v. F.A.A.*, 372 F.3d 1195, 1200 (10th Cir. 2004) ). The Court will "consider whether the ALJ followed the specific rules of law that must be followed in weighing particular types of evidence in disability cases, but [it] will not reweigh the evidence or substitute [its] judgment for the Commissioner's." *Id.* (quoting *Hackett*, 395 F.3d at 1172 (internal quotation marks omitted)).

"The possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence." *Id.* (quoting *Zoltanski*, 372 F.3d at 1200). The Court "may not 'displace the

agenc[y's] choice between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it de novo.'" *Id.* (quoting *Zoltanski*, 372 F.3d at 1200).

**IV. Discussion**

The ALJ determined that Plaintiff's mental impairments did not "cause more than minimal limitation in [his] ability to perform basic mental work activities and [were] therefore non-severe." AR at 33. He did not include any mental limitations in his RFC. See AR at 34-35. Plaintiff now raises a single issue in his motion with regard to his mental impairments. He argues that the ALJ improperly weighed the opinions of his treating psychiatrist, Anthony Umpierre, M.D. ("Dr. Umpierre"), and his treating social worker, Toribio M. Garcia, LCSW ("LCSW Garcia"). *Docs. 17* at 10; *22* at 1.

**A. The ALJ erred in his evaluation of Dr. Umpierre's opinions.**

Dr. Umpierre completed a Medical Assessment of Ability to do Work-Related Activities (Mental) on September 21, 2017. AR at 493-94. In the "comments" section of the assessment form, Dr. Umpierre wrote: "Difficulty retaining information and processing information." AR at 493. Dr. Umpierre found Plaintiff to have marked limitations in the following areas: understanding and remembering detailed as well as very short and simple instructions, carrying out detailed instructions, maintaining attention and concentration for extended periods of time, performing activities within a schedule, maintaining regular attendance and being punctual, sustaining an ordinary routine without special supervision, working in coordination with and in proximity to others, completing a normal workday and workweek without interruptions from psychologically-based symptoms, performing at a consistent pace without unreasonable

rest periods, interacting appropriately with the general public, asking simple questions or requesting assistance, accepting instructions and responding appropriately to criticism from supervisors, responding appropriately to changes in the work place, traveling to unfamiliar places or using public transportation, and setting realistic goals or making plans independently of others. AR at 493-94. The assessment form defined a "marked" limitation as "[a] severe limitation which precludes the individual's ability usefully to perform the designated activity on a regular and sustained basis . . . . The individual cannot be expected to function independently, appropriately, and effectively on a regular and sustained basis." AR at 497.

The ALJ effectively rejected Dr. Umpierre's opinions when he assigned them "[l]ittle weight." *See* AR at 39; *see also Chapo v. Astrue*, 682 F.3d 1285, 1288-89 (10th Cir. 2012) (according a medical opinion "little weight" is "effectively rejecting" that opinion). The ALJ offered the following explanation for this rejection: "Little weight was afforded to the check-box medical source statements, as they are inadequately explained and not consistent with the other medical evidence of record." AR 39. Plaintiff submits that these reasons were not sufficiently specific to enable meaningful review of the ALJ's evaluation of Dr. Umpierre's opinions. *Doc. 17* at 10. The Court agrees.

When evaluating an acceptable medical treating source's opinions, an ALJ must complete a sequential two-step inquiry. *Krauser v. Astrue*, 638 F.3d 1324, 1330 (10th Cir. 2011). First, he must determine whether the opinion is entitled to "controlling weight." *Watkins v. Barnhart*, 350 F.3d 1297,1300 (10th Cir. 2003). An ALJ is required to accord the opinion controlling weight if it is both "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and "consistent with other

7

substantial evidence in the record." *Id.* Even if the opinion is not entitled to controlling weight, "[t]reating source medical opinions . . . must be weighed using all of the factors provided in 20 C.F.R. § 404.1527" at the second step of the ALJ's analysis. *Id.* (quoting SSR 96-2p, 1996 WL 374188, at 4 (July 2, 1996)). The Tenth Circuit has summarized these factors as:

> (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) the consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

*Krauser*, 638 F.3d at 1331. While an ALJ need not expressly apply each of these six factors, *see Razo v. Colvin*, 663 F. App'x 710, 715 (10th Cir. 2016), he "must give good reasons—reasons that are 'sufficiently specific to make clear to any subsequent reviewers'—for the weight that he ultimately assigns to" those opinions, *Padilla v. Colvin*, No. 14cv0495 CG, 2015 WL 10383109, at *4 (D.N.M. June 29, 2015) (quoting *Langley v. Barnhart*, 373 F.3d 1116, 1119 (10th Cir. 2004)). And the ALJ's "determination, like all of his findings, must be supported by substantial evidence." *Id.*

As an initial matter, Plaintiff contends that the ALJ failed to address whether Dr. Umpierre's opinion was entitled to controlling weight. *Docs. 17* at 13-14; *22* at 2. Plaintiff notes that the ALJ lumped together his evaluation of the opinions of Dr. Umpierre, an acceptable medical source and a treating psychiatrist, with those of LCSW Garcia, a source who did not qualify as an acceptable medical source under the regulations. *Doc. 17* at 13 (citing 20 C.F.R. § 404.1502). Yet, there is a distinction in the regulations

8

between "acceptable" medical sources and those that are not. *See* SSR 06-3p, 2006 WL 2329939 at *2 (Aug. 2, 20016). The ALJ did not address this distinction. While not reversible error in itself, the grouping of opinions of two types of medical sources – one an acceptable medical source and one not – does raise questions about whether the ALJ, in fact, applied the correct standard to Dr. Umpierre's opinions. Such questions might have been rendered moot when the ALJ gave "little weight" to both opinions, s*ee Tarpley v. Colvin*, 601 F. App'x 641, 643-44 (10th Cir. 2015), but, instead, they were compounded by the ALJ's failure to discuss the applicable *Watkins* factors to any meaningful degree.

Plaintiff maintains that the ALJ failed to adequately address the *Watkins* factors. *Docs. 17* at 14-17; *22* at 2. Of the six *Watkins* factors, the ALJ mentioned only two: the degree to which the opinion was supported by relevant evidence and the consistency between the opinion and the record as a whole. *See* AR at 39. He did not, however, discuss these factors in depth. *See* AR at 39. Further, he ignored Dr. Umpierre's nine-month treating relationship with Plaintiff, his completion of both physical and mental status exams, and his specialization in the field of Psychiatry. *See* AR 784-882. In addition, Plaintiff insists that he neglected to give specific, legitimate reasons for rejecting Dr. Umpierre's opinion. *Docs. 17* at 14-17; *22* at 2. He maintains, for instance, that the ALJ failed to explain how Dr. Umpierre's medical source statement was inadequately explained or how the record contradicts his assessments. *Doc. 22* at 2.

The Commissioner argues that the rejection of Dr. Umpierre's opinion was appropriate given that "Plaintiff's mental health care course of treatment was routine in nature." *Doc. 19* at 9. He submits that "[b]ased on the routine course of treatment, the

ALJ reasonably found that Plaintiff's mental impairments did not significantly affect his ability to perform basic work activities or impose any mental work-related limitations." *Id.* at 10. The Commissioner references *Simmons v. Colvin*, 635 F. App'x 512, 515–16 (10th Cir. 2015), for the proposition that an ALJ properly rejects an opinion when the medical source's impairment ratings on forms are more extreme than their own treatment notes suggest. *Doc. 19* at 9. The problem with this explanation is that it is supplied by the Commissioner and not the ALJ. The ALJ offered three simple reasons for his rejection of Dr. Umpierre's opinion: the use of checkboxes, an inadequate explanation of his opinions, and inconsistency with *other* medical evidence. *See* AR at 39.

The Court considers, first, whether the use of checkboxes was a legitimate reason to reject Dr. Umpierre's opinion. Plaintiff insists that it was not, arguing that "check-box forms from a treating source cannot be discounted merely because they are check-box forms." *Doc, 17* at 15. Conversely, the Commissioner maintains that Dr. Umpierre's reliance on checkboxes provided a proper basis for the ALJ's rejection of his opinions. *Doc. 19* at 9. The Commissioner relies on *Frey v. Bowen*, 816 F.2d 508, 515 (10th Cir. 1987), in which the Tenth Circuit observed that a medical source's report "consist[ed] solely of boxes checked on the Secretary's form to indicate his conclusion of no limitation on right arm use. Such evaluation forms, standing alone, unaccompanied by thorough written reports or persuasive testimony, are not substantial evidence." *Id.* at 515.

However, the Court notes that in this case, Dr. Umpierre *did* offer some commentary in his medical assessment, though not detailed, and the record also

contains his accompanying treatment records, which provide more detail about his treatment and assessment of Plaintiff. AR 493-94, 687-887. Moreover, the Tenth Circuit has distinguished *Frey* in the context of treating source opinions. *See Carpenter v. Astrue*, 537 F.3d 1264, 1267 (10th Cir. 2008).

In *Carpenter*, the Tenth Circuit reasoned that a treating source's opinion should not be discounted merely because it contained checkboxes. *Id.* Distinguishing *Frey*, the court explained: "In *Frey*, however, we dealt with a nontreating physician's checkmarks on the agency's RFC form 'based on the most limited sort of contact and examination. There [was] no indication of careful study of [the claimant's] history or prior examinations . . . ." *Id.* It follows that, as a treating psychiatrist, Dr. Umpierre's use of checkboxes alone does not suffice as a legitimate reason for rejecting his opinions. As such, the Court must consider the other reasons offered by the ALJ for his rejection of Dr. Umpierre's opinions.

The second reason the ALJ provided was that Dr. Umpierre's opinions were "inadequately explained." AR at 39. In this regard, the Commissioner suggests that "the ALJ reasonably found that the **extreme** opinions were unsupported." *Doc. 19* at 9 (emphasis added). But the ALJ himself did not characterize Dr. Umpierre's opinions as "extreme," and the Court is constrained to consider only the rationale offered by the ALJ, not any *post hoc* rationale provided by the Commissioner. The ALJ merely described Dr. Umpierre's opinions as "inadequately explained," failing to elaborate. *See* AR at 39. It could be that the ALJ considered the opinions "inadequately explained" because of their form – that is, because they consisted of checkbox opinions. Again, this would not be a legitimate reason for rejecting Dr. Umpierre's opinions here.

11

Upon the Court's examination of Dr. Umpierre's opinions, it acknowledges that his mental assessment is not a model of thoroughness. After all, Dr. Umpierre offered only one written comment to supplement his checkbox opinions. Notably, however, the ALJ neglected to discuss that singular comment. More importantly, he failed to discuss Dr. Umpierre's more detailed treatment notes save the following brief statement in which he referenced a record from Dr. Umpierre without mentioning his name:

> On September 12, 2017, [Plaintiff] reported being somewhat apprehensive because of his upcoming disability hearing. He reported not being as active due to air quality. [Plaintiff] had a Body Mass Index (BMI) of 49.6. He had a normal gait at the exam.

AR at 39. The ALJ ignored other details contained in this same September 12, 2017 record, particularly the abnormal mental exam findings, including Dr. Umpierre's report that Plaintiff's "energy is low," he "tends to stay home a lot," his mood was "okay," and his insight and judgment were "fair." AR at 877-80. Additionally, the ALJ failed to mention Dr. Umpierre's plan to "continue Zoloft 200 mg[3] QAM with Wellbutrin XL 150 mg QAM" and to "[a]ssess in the future increasing the Wellbutrin or switching the Zoloft to Effexor." AR at 877.

While an ALJ is not required to mention every item of evidence, of course, he must provide "adequate reasons" for his rejection of any significantly probative medical evidence concerning a claimant's RFC. *Givens v. Astrue*, 251 F. App'x 561, 568 (10th Cir. 2007). Here, the ALJ failed to do so. He also failed to tie his discussion of Dr.

---

[3] As noted by Plaintiff, the "therapeutic range for Zoloft is 50-200 milligrams." *Doc. 17* at 17 (citing www.rxlist.com). According to the RxList website "[f]or adults and pediatric patients, subsequent dosages may be increased in case of an inadequate response in 25 to 50 mg per day increments once a week, depending on tolerability, up to a maximum of 200 mg per day. *Zoloft*, RxList, https://www.rxlist.com/zoloft-drug.htm#dosage.

Umpierre's September 12, 2017 treatment note to his conclusion that Dr. Umpierre's opinions were inadequately explained. It could be said that the ALJ "inadequately explained" the manner in which he found Dr. Umpierre's opinions to be "inadequately explained."

Based on the Court's review, considerable detail *is* found in Dr. Umpierre's accompanying treatment notes. These notes demonstrate that Dr. Umpierre performed a detailed psychological history, a detailed physical history, a review of symptoms and examination. AR at 784-91. He also opined on Plaintiff's diagnoses and adjusted his medication. *See* AR 784-91. The thorough explanation of opinions that the ALJ was unable to find in Dr. Umpierre's checkbox opinions is arguably found within these treatment records.

Third, the ALJ described Dr. Umpierre's assessment as "not consistent with the other medical evidence [of] record." AR at 39. Both the Commissioner and Plaintiff highlight abnormal mental exam findings within the record, which in the Court's view, are *consistent* with Dr. Umpierre's opinions. *See Doc. 19* at 8 (citing AR at 776, 797, 805, 810, 823, 829, 842, 853, 857, 869, 875, 884 (abnormal findings)); *see also Doc. 22* at 5 (same). The Commissioner also references *normal* findings, which he suggests demonstrate that the "abnormal findings were sporadic and fluctuating." *Doc. 19* at 8. But, again, this explanation is supplied by the Commissioner, not by the ALJ. *Compare Doc. 19* at 8, *with* AR at 30-41. The ALJ highlighted almost exclusively normal and positive mental exam findings.[4] AR at 33. He neglected to discuss the contrary

---

[4] The ALJ gleaned the following *positive* mental assessments from Plaintiff's records: he "has good recall and no side effects from his medication," memory that was "grossly intact and a "thought process [that] was logical; linear; and coherent with good abstraction," "has no suicidal

13

abnormal mental exam findings cited by the parties, though he acknowledged Plaintiff's testimony that he had racing thoughts, took medication for anxiety and depression, and was forgetful. AR at 33. Dr. Umpierre's own treatment notes provide support for his opinions, and the ALJ does not describe Dr. Umpierre's records as internally inconsistent. Additionally, as discussed hereinafter, Dr. Umpierre's treatment notes mirror those of LCSW Garcia. *Compare* AR at 493-94, *with* AR at 496-97.

      The ALJ neglected to identify the particular portions of the record that he found inconsistent with Dr. Umpierre's treatment records. *See Hamlin v. Barnhart*, 365 F.3d 1208, 1217 (10th Cir. 2004) (observing that when an ALJ rejects an opinion as inconsistent with those of other medical providers, he or she should "specifically highlight those portions of the record [that were] allegedly inconsistent"). While the ALJ did include a brief discussion of Plaintiff's psychological treatment in his Step-Two analysis, he did not explain how the records he discussed differed from those of Dr. Umpierre. *See* AR at 33. While it may be "possible to assemble support" for the ALJ's conclusion that Dr. Umpierre's opinion was inconsistent with other medical evidence from other portions of the ALJ's decision, under the circumstances here it "is best left for the ALJ to do in the proceeding on remand.'" *Mays v. Colvin*, 739 F.3d 569, at 9-10 (10th Cir. 2014).

---

or homicidal ideations," has "thought content and behavior [that] were normal," "exhibited normal mood and affect," "exhibited normal speech, good eye contact and a euthymic mood at exams," had "cognition [that was] normal and [] thought process [that was] organized," attention that was "grossly intact," "no psychosis, delusions, or hallucinations," was "alert and oriented to person, place, time, and situation," "was cooperative and groomed," and had "insight [that was] fair to good." AR at 33.

The Court finds itself in a similar predicament to the court in *Lewis v. Berryhill*, 680 F. App'x 646 (10th Cir. 2017). There, the Tenth Circuit evaluated an ALJ's determination that a medical opinion was inconsistent with the medical record. *Id.* at 647. The ALJ did not elaborate on the inconsistencies, and the court was "left to speculate about the perceived inconsistencies between [the] assessment and the remainder of the medical record." *Id.* The court characterized the ALJ's justification for his rejection of the opinion as "too vague" and remanded. *Id.*

Here, as in *Frey*, the ALJ failed to adequately explain his rejection of Dr. Umpierre's opinions. Because the Court cannot meaningfully review the ALJ's rationale for rejecting these opinions, the Court will remand. *See Osborn v. Colvin*, CIV 151069 KBM, 2016 WL 9774957, at *4-5 (D.N.M. Dec. 19, 2016) (determining that the ALJ's analysis was inadequate at both steps of the treating physician inquiry, given the ALJ's failure to enunciate how the opinion was inconsistent with the record evidence); *Krauser*, 638 F.3d at 1331 (explaining that the ALJ's point about the opinion being "inconsistent with other evidence" was stated in "conclusory fashion, without reference to 'those portions of the record with which [the physician's] opinion was allegedly inconsistent'").

Ultimately, the Court agrees with Plaintiff that the ALJ's reasons for discounting the opinions of Dr. Umpierre do not withstand scrutiny. The ALJ failed to properly weigh his opinions in accordance with 20 C.F.R. § 404.1527 and the *Watkins* factors, and it is not clear that he followed the two-step process for evaluating treating source opinions. Likewise, he failed to give specific, legitimate reasons for rejecting Dr. Umpierre's opinions.

**B. The ALJ erred in his evaluation of LCSW Garcia's opinions.**

LCSW Garcia completed a Medical Assessment of Ability to do Work-Related Activities (Mental) on September 26, 2017. *See* AR at 496-97. In the "comments" sections of that assessment, he explained:

> I have worked with Mr. Martinez since December 1, 2016. He does have difficulty remembering/retaining information. Especially has difficulty in comprehension, understanding and processing information. . . . Mr. Martinez is forgetful and concentration is poor . . . . Friendly person – But can be vulnerable. . . . Vulnerable – Easily can get anxious and panic when doesn't comprehend.

AR at 496-97. His opinions concerning marked limitations mirror those of Dr. Umpierre. AR at 496-97.

As with Dr. Umpierre's opinions, the ALJ effectively rejected LCSW Garcia's opinions by assigning them "[l]ittle weight." *See* AR at 39; *Chapo*, 682 F.3d at 1288-89. The ALJ offered the same explanation for rejecting LCSW Garcia's opinions: "Little weight was afforded to the check-box medical source statements, as they are inadequately explained and not consistent with the other medical evidence of record." AR at 39. Plaintiff submits that these reasons were not sufficiently specific to enable meaningful review of the ALJ's evaluation of LCSW Garcia's opinions. *Doc. 17* at 10. Again, the Court agrees.

The ALJ must "consider all relevant evidence in the record, including opinions from medical and non-medical sources who have treated [Plaintiff]." *See* SSR 06-03p, 2006 WL 2329939, at *2 (Aug. 9, 2006). A licensed social worker, like LCSW Garcia, is not an "acceptable medical source" pursuant to 20 C.F.R. § 416.913. *See id.* As such, his opinions are not entitled to controlling weight. *See id.* They are, however, "valuable

sources of evidence for assessing impairment severity and functioning." *See id.* Indeed, a non-acceptable medical source may in some cases be entitled to more weight than an "acceptable medical source" with respect to the severity and degree of a claimant's limitations. 20 C.F.R. § 416.913(a); *Frantz v. Astrue*, 509 F.3d 1299, 1301-02 (10th Cir. 2007). Medical evidence and opinions from non-acceptable medical sources are weighed under the same *Watkins* factors applicable to acceptable medical sources. *See* 20 C.F.R. §§ 404.1527(c)(1)-(6), 416.927(c)(1)-(6); *see also Crowder v. Colvin,* 561 F. App'x 740, 744 (10th Cir. 2014).

Plaintiff maintains that the ALJ did not properly apply these factors or provide adequate reasons for rejecting LCSW Garcia's opinion. *Doc. 17* at 20. As noted above, the ALJ combined his analysis of Dr. Umpierre's opinions with his analysis of LCSW Garcia's opinions, concluding "Little weight was afforded to the check-box medical source statements, as they are inadequately explained and not consistent with the other medical evidence [of] record." AR at 39. Once again, check-box medical source statements must not be discounted merely because of their format. *See Carpenter*, 537 F.3d at 1267.

As to the ALJ's conclusion that LCSW Garcia's opinions were "inadequately explained," Plaintiff submits that this conclusion is itself "inadequate and **not** supported by substantial evidence." *Doc. 17* at 20. As the Commissioner acknowledges, LCSW Garcia's assessment provides more commentary than that of Dr. Umpierre, primarily related to his observations about Plaintiff's difficulty remembering and comprehending information. *See Doc. 19* at 9. The ALJ did not discuss any of LCSW Garcia's comments or otherwise explain why he found his opinions to be inadequately explained.

17

*See* AR at 39. Further, as with Dr. Umpierre, the record contains numerous detailed treatment records from LCSW Garcia that support his opinions. AR at 496-97, 761-67, 775-77, 796-98, 804-06, 823-25, 832-34, 841-43, 852-54, 856-58, 865-76, 883-85.

The ALJ also suggested that LCSW Garcia's opinions were inconsistent with other medical evidence of record. *See* AR at 39. Plaintiff again submits that this reason is inadequate and unsupported by substantial evidence. *Doc. 17* at 21. The Commissioner, in contrast, maintains that LCSW Garcia's opinions were "extreme," where Plaintiff's mental health care course of treatment was "routine." *Doc. 19* at 9. But as noted above, the ALJ himself did not characterize LCSW Garcia's opinions as "extreme" nor Plaintiff's treatment as "routine." Instead, he briefly discussed only one treatment note from LCSW Garcia, which Plaintiff insists he mischaracterized. *See* AR at 39. The Court agrees.

Discussing an August 29, 2017 treatment note from LCSW Garcia, the ALJ reported that Plaintiff "was insightful at the exam and stated he was able to fish, camp, and do things he enjoys. He planned to go fishing." AR at 39 (no citation provided). But the ALJ's selective quotations from this record are misleading and taken out of context. *In context*, the treatment note provides as follows:

> Patient brought in his BD – Checklist where he scored a 63 suggesting severe depression and states he is less anxious. His BAI suggests moderate anxiety. He scored a 32. Patient states he still feels sad, loss of interest in activities he used to enjoy such as fishing, loss of motivation, worries about his health and feeling tired. . . . Patient was asked by therapist if he did not have depression and anxiety what would he do and he states, fishing, camping and doing things he enjoys. Patient was insightful today as he states, he can do those activities. He plans to go fishing.

18

AR at 874. In that same record, LCSW Garcia described Plaintiff's mood as "depressed," and his insight and judgment as "fair to good." AR at 875. He recommended that Plaintiff "return to doing what he has enjoyed in the past." AR at 876. However, there is nothing in the record to indicate that Plaintiff actually followed LCSW Garcia's recommendation or resumed participation in any former hobbies. *See* AR at 761-885. As such, the ALJ misconstrued the only treatment record from LCSW Garcia that he discussed. This error may have contributed to the ALJ's conclusion that the opinions of LCSW Garcia, and perhaps even Dr. Umpierre, were inconsistent with the medical record or inadequately explained.

Other records from LCSW Garcia, which the ALJ did not discuss, reveal that Plaintiff's mental testing suggested that he suffered from "severe depression" and "severe anxiety" at times throughout his treatment. *See, e.g.*, AR at 775-77, 796-98, 823-25, 832-34, 874-76. He sometimes appeared disheveled and felt helpless, and his mood was often described as depressed and/or anxious. *See, e.g.*, AR at 804-06, 823-25, 832-34, 856-58, 868-69. As with Dr. Umpierre, the Court concludes that the ALJ failed to properly weigh the opinions of LCSW Garcia or to provide adequate reasons for rejecting his opinions.

### C. The ALJ's errors were not harmless.

The Commissioner argues that any error with respect to Plaintiff's mental impairments was cured by the ALJ's Step-Five findings. *Doc. 19* at 10. At Step Five, the ALJ determined that Plaintiff could perform two representative jobs: housekeeper cleaner and cafeteria attendant. AR at 41. According to the Commissioner, these jobs are Level-Two jobs, which correspond with unskilled work. *Doc. 19* at 11 (citing SSR 00-

4p, 2000 WL 1898704, at *3 (Dec. 4, 2000)). The Commissioner submits that because the vocational expert identified two unskilled jobs, any error by the ALJ in evaluating the opinions of Dr. Umpierre and LCSW Garcia was harmless. As Plaintiff explains, however, "an ALJ's failure to discuss and weigh a medical source opinion is harmless error 'if there is no inconsistency between the opinion and the ALJ's assessment of residual functional capacity.'" *Doc. 22* at 2 (citing *Harrold v. Berryhill*, 714 F. App'x 861 (10th Cir. 2007)). Here, there *were* inconsistencies between the ALJ's RFC and the opinions of Dr. Umpierre and LCSW Garcia. *Compare* AR at 34-35, *with* AR at 493-94, 496-97. Indeed, the ALJ gave no mental limitation in his RFC. *See* AR at 34-35. And neither the ALJ's RFC, nor the hypothetical he provided to the VE, encompassed all of the marked limitations opined by Dr. Umpierre and LCSW Garcia. *Compare* AR at 493-94, 496-97, with AR at 34-35 and 99-105. The ALJ's error was not harmless, and this matter must be remanded.

**V. Conclusion**

In sum, the Court concludes that the ALJ committed reversible error by failing to properly evaluate the opinions of Dr. Umpierre and LCSW Garcia. Plaintiff's motion will be granted.

Wherefore,

**IT IS ORDERED** that Plaintiff's Motion to Reverse and/or Remand (*Doc. 17*), filed May 8, 2019, is **GRANTED**.

_____
UNITED STATES MAGISTRATE JUDGE
Presiding by Consent